# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re EPD INVESTMENT CO., LLC and JERROLD S. PRESSMAN | CV 21-848 DSF<br><br>Opinion AFFIRMING Judgment of Bankruptcy Court |
| POSHOW ANN KIRKLAND,<br>  Appellant,<br><br>    v.<br><br>JASON M. RUND,<br>  Appellee. | |

  Appellant Poshow Ann Kirkland, as trustee for the Bright Conscience Trust (BC Trust), appeals the judgment of the Bankruptcy Court after a jury trial before this Court between Bankruptcy Trustee and Appellee, Jason M. Rund (Trustee), and John Kirkland.[1] Specifically, the BC Trust appeals the jury verdict in the context of the Bankruptcy Court's rulings that an adverse finding by the jury that the debtor, EPD Investment Co., LLC, was a Ponzi scheme is binding on the BC Trust.[2]

---

[1] The BC Trust, through its trustee, is a defendant in the relevant adversarial case but did not directly take part in the jury trial.

[2] Due to the posture of the case, this Court is in the unusual position of reviewing on appeal its own rulings in the underlying adversarial trial after withdrawal of the reference from the Bankruptcy Court.

## I. Standing to Appeal

The Trustee argues that the BC Trust does not have standing to pursue this appeal because (1) the BC Trust was not a party to the jury trial; (2) the BC Trust arguably indicated in certain post-trial briefing that it believed that the jury findings were final and binding; and (3) the BC Trust did not challenge those findings in any post-trial motions.

The Court disagrees with the Trustee and finds that the BC Trust has standing to appeal. The BC Trust has always been a party to the adversarial action, even if it was not directly involved in the jury trial proceeding, and it is undisputed that the jury finding that EPD was a Ponzi scheme is being used against the BC Trust.[3]

The Trustee also argues that the statement of issues that the BC Trust filed with the Bankruptcy Court differs so greatly from the issues presented in the opening brief that the appeal should be dismissed. This argument has no merit. The issues on appeal filed with the Bankruptcy Court are substantially the same as those that have been argued on appeal by the BC Trust even if they were phrased slightly differently in the BC Trust's opening brief.

---

[3] The failure to file a post-verdict motion for judgment as a matter of law generally precludes appellate review of sufficiency of the evidence to support the verdict. Nitco Holding Corp. v. Boujikian, 491 F.3d 1086 (9th Cir. 2007). While the Trustee raised this argument under the rubric of standing rather than waiver, the substance of the point was made and is the same: the BC Trust was present at the trial and its aftermath and failed to challenge the sufficiency of the evidence in a Rule 50(b) motion at the time. However, the BC Trust argues that it procedurally never had the opportunity to file a Rule 50(b) motion both because it did not directly participate in the trial and because judgment was never entered and the 28-day time limit for filing such a motion never began. The Trustee does not directly refute these points, and, in light of this and the unusual posture of the case, the Court declines to rule that the issue of evidence sufficiency was waived.

## II. Standard of Review

The BC Trust appeals this Court's formulation of the jury instruction defining a Ponzi scheme, the publication of certain evidence to the jury, and the sufficiency of the evidence in support of the jury's Ponzi scheme finding.

A court of appeals "review[s] de novo whether a district court's jury instructions accurately state the law, and … review[s] for abuse of discretion a district court's formulation of jury instructions." Coston v. Nangalama, 13 F.4th 729, 732 (9th Cir. 2021). Jury instructions must be formulated so they fairly and adequately cover the issues presented, correctly state the law, and are not misleading. See Wall Data Inc., v. Los Angeles County Sheriff's Dep't, 447 F.3d 769, 784 (9th Cir. 2006). When the alleged error is in the formulation of the instructions, the instructions are to be considered as a whole and an abuse of discretion standard is applied to determine if they are misleading or inadequate. See Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001).

The trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); Newmaker v. City of Fortuna, 842 F.3d 1108, 1110 (9th Cir. 2016). Evidentiary rulings are also reviewed for an abuse of discretion. See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008); Clare v. Clare, 982 F.3d 1199, 1201 (9th Cir. 2020) (reversing district court's exclusion of declaration because it was an abuse of discretion). To reverse on the basis of an erroneous evidentiary ruling, the reviewing court must conclude not only that there was an abuse of discretion, but also that the error was prejudicial. See Harper v. City of Los Angeles, 533 F.3d 1010, 1030 (9th Cir. 2008).

A jury's verdict must be upheld if supported by "substantial evidence." See Dees v. Cnty. of San Diego, 960 F.3d 1145, 1151 (9th Cir. 2020). Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence. See id. The credibility of the witnesses and

the weight of the evidence are issues for the jury and generally are not subject to appellate review. See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc., 897 F.3d 1008, 1015 (9th Cir. 2018).

### III. Analysis

A.  **Jury Instruction Regarding the Definition of a Ponzi Scheme**

The BC Trust argues that this Court erred in the construction of its jury instruction defining a Ponzi scheme. Specifically, the BC Trust argues that the Court should have instructed the jury that the perpetrator of a Ponzi scheme – in this case, Pressman – must know that the enterprise will eventually collapse when it is no longer able to attract new investors.

The Court finds that it did not err in declining to instruct the jury regarding a *mens rea* element when considering whether EPD was a Ponzi scheme. When an objective Ponzi scheme exists – that is, a structure that can sustain itself and pay out promised returns to investors only by bringing in new investors – there is a presumption of fraudulent intent. "[T]he mere existence of a Ponzi scheme, which could be established by circumstantial evidence, has been found to fulfill the requirement of actual intent on the part of the debtor." In re Agric. Rsch. & Tech. Grp., Inc., 916 F.2d 528, 536 (9th Cir. 1990). To the degree that EPD took on the structure of a Ponzi scheme through Pressman's actions, he is presumed to have fraudulent intent in taking money from investors. Id. at 535-36.

B.  **Jury Instruction Ruling Regarding Whether Lenders Can Be Victims of a Ponzi Scheme**

The BC Trust takes issue with the Court's instruction that included "lenders" as a possible class that could be victims of a Ponzi scheme. Specifically, the BC Trust argues that the victims of a Ponzi scheme have to be "investors," and someone who lends money to an enterprise – presumably as opposed to someone who makes an equity investment – is not an "investor." But the BC Trust's position is unsustainable in

4

light of the numerous Ponzi scheme cases that involve lenders as victims. Charles Ponzi's scheme itself defrauded victims who had loaned money to Ponzi's enterprise. The Court sees no reason categorically to exclude lenders from the types of "investors" that could be defrauded by a Ponzi scheme. The BC Trust recognizes the problem in such a categorical argument and states:

> [W]hile different in form, some "loans" should be treated as investments when the lender expects the promised rewards to depend on the financial success of the particular profit-making enterprise that the Ponzi scheme borrower purports to operate.

Appellant's Op. Br. at 34. But all loans are, at some level, "depend[ent] on the financial success of the particular profit-making enterprise" that is being loaned to. The BC Trust appears to believe that the Court should have given an instruction differentiating "real" loans from "investment" loans, but doesn't provide much, if any, basis for making that distinction. Nor does it provide much reason why a "real" lender could not be a victim of a Ponzi scheme if the scheme could pay back the loans only through an ever-continuing stream of future lenders or investors.

C.   **Publication of Certain Expert-Related Exhibits**

The BC Trust argues that the Court erred in allowing the Trustee to publish to the jury certain demonstratives prepared by the Trustee's expert, Thomas Jeremiassen. The Court did not abuse its discretion, or even err at all, in allowing the demonstratives to be published. Federal Rule of Evidence 703 allows facts and data relied on by an expert *that would otherwise be inadmissible* from being disclosed to the jury only if their probative value substantially outweighs any prejudicial effect. The flaw in the BC Trust's argument – as it was for Kirkland at trial when he made the same objections – is that the EPD financial data underlying the demonstratives was admissible and was, in fact, admitted. In that case, the limitation of Rule 703 does not apply. Nor was a limiting instruction warranted because there was nothing related

to the properly published demonstratives that the jury should have been instructed about.

## D. Sufficiency of the Evidence

But the BC Trust's primary argument on appeal is that substantial evidence did not support the jury's finding that EPD was a Ponzi scheme. A jury verdict must be upheld if there is substantial evidence to support it. "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999).

While not overwhelming in all aspects, there was substantial evidence to support the jury's finding that EPD was a Ponzi scheme. Evidence showed that between 2003 and 2010, EPD did not make any profits and consistently had liabilities that greatly exceeded its assets. In addition, most of the assets booked by EPD were loans to Pressman and Pressman-related entities, and there was little to no evidence that any of those debtors had the ability to pay the loans back. Yet, during this time, money consistently came in from new lenders and was paid out to the Pressman principals of EPD and to earlier lenders. The Trustee's expert also directly testified that new money from lenders/investors was used to pay older lenders/investors. He noted that at times there was simply not enough money coming in from sources other than new lenders/investors to account for the outflows to existing lenders/investors. He also testified to several occurrences where EPD's starting bank balance was low so he could directly trace incoming money paid by investors/lenders to older ones.

Kirkland attempted at trial and the BC Trust attempts on appeal characterize EPD's use of incoming loans to pay old loans as simply refinancing EPD's debts, as many legitimate businesses do. This legitimate refinancing argument was available to the jury, but it did not accept it and the Court finds that the evidence presented did not require the jury to accept it.

## IV. Conclusion

The judgment of the Bankruptcy Court is AFFIRMED.

Date: September 30, 2022

*Dale S. Fischer*
Dale S. Fischer
United States District Judge